UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTINA MARIE SMITH,

    Plaintiff,

v.                                    Case No. 1:20-cv-621
                                                    Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

## OPINION

*Pro se* plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her claim for supplement security income (SSI).

On June 15, 2018, plaintiff filed an application for SSI alleging a disability onset date of June 15, 2018. PageID.60. Plaintiff's application listed various conditions which affected her ability to work including degenerative disc disease, sciatica, and degenerative bone disease. PageID.224. Prior to applying for SSI, plaintiff completed the 11th grade and had past relevant work as a landscape laborer. PageID.71. Attorney Verelle Kirkwood represented plaintiff at the administrative hearing on May 23, 2019. PageID.78. The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on June 14, 2019. PageID.60-73. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

## I. LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.     ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since her application date of June 15, 2018. PageID.62. At the second step, the ALJ found that plaintiff had severe impairments of degenerative disc disease and obesity. *Id*. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.65.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she must be allowed to use an assistive device to ambulate to and from the workstation. The claimant must also be allowed to change positions between sitting and standing at will, but without leaving the workstation. Furthermore, the claimant can only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, and she can never climb ladders or scaffolds. The claimant can also have no exposure to unprotected heights.

PageID.66. The ALJ also found that plaintiff is unable to perform any past relevant work. PageID.71.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the sedentary exertional level. PageID.72-73. Specifically, the ALJ found that plaintiff could perform the requirements of unskilled, sedentary work in the national economy such as information clerk (900,000 jobs), order clerk (200,000 jobs), and call out operator

4

(50,000 jobs). PageID.72. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, since June 15, 2018 (the date the application was filed) through June 14, 2019 (the date of the decision). PageID.73.

### III.   DISCUSSION

*Pro se* plaintiff did not submit a statement of errors as directed by the Court. *See* Notice (ECF No. 16); Plaintiff's *pro se* briefs (ECF No. 19 and 20). The gist of plaintiff's claim (as presented by her counsel at the agency level) is that she suffers from disabling back pain. PageID.88-92. The ALJ concluded that plaintiff could not perform her past relevant work. The issue before the Court is whether the ALJ's finding that plaintiff has the residual functional capacity (RFC) to perform other work in the national economy is supported by substantial evidence.

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 416.945. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). The ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004) (internal quotation marks and brackets omitted).

For claims filed after March 17, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Now, the SSA "will articulate in our determination or decision how

5

persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record." 20 C.F.R. § 404.1520c(b).  In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors.  *See* 20 C.F.R. § 404.1520c(c)(1)-(5).

As discussed, the ALJ found that plaintiff retained the RFC to perform a range of sedentary work, provided that she could use an assistive device to ambulate to and from the workstation, change positions between sitting and standing at will, never climb ladders or scaffolds, and only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs. In determining this RFC, the ALJ performed an extensive review of plaintiff's medical history commencing in March 2014 – more than four years before plaintiff's alleged disability onset date. PageID.66-71.

The ALJ considered a consultative examination with Wissam El Fallal, D.O., which occurred in January 2018 (six months before the alleged onset date) in connection with an earlier claim for benefits.  PageID.67, 440-445.  At that time, plaintiff reported low back pain.  *Id*.  While plaintiff noted a history of radiation of pain and numbness to her lower extremity, she added that "this has resolved over the past year (as) she has had significant improvement with physical therapy."  *Id*.  Despite plaintiff's report of back pain, she had minimal functional impairments:

> Notably, the claimant denied using any assistive devices. Dr. El Fallal observed that the claimant demonstrated an antalgic gait, tenderness to palpation in the lumbosacral spine, diminished range of motion of the lumbar spine, decreased squatting capacity, and positive FABER testing. However, Dr. El Fallal stressed that the claimant showed otherwise normal range of motion of the spine and extremities, normal 5/5 muscle strength, symmetric deep tendon reflexes, intact sensation, negative straight leg-raise testing, no muscle atrophy, and no focal neurological deficits. Dr. El Fallal also noted that the claimant showed intact abilities to ambulate without an assistive device, heel and toe walk, tandem walk,

>   open and close buttons, open and close a pen cap, and take out her driver's license. (Ex. 6F).

*Id*.

Notably, plaintiff has seen two neurologists with respect to her back pain, Paula Kilmer, M.D., and Chris Sloffer, M.D. Neither neurologist found that plaintiff had serious functional limitations inconsistent with the RFC. While plaintiff presented with a cane, both doctors found that she had normal muscle strength and normal gait. The ALJ summarized the doctors' examinations as follows:

>   Upon consultation in September 2018, neurologist Paula Kilmer, M.D., observed that the claimant exhibited intact gait, intact station, fair posture, normal 5/5 motor strength, symmetric deep tendon reflexes, and intact sensation. Dr. Kilmer recommended injection therapy (Ex. 15F/32). Later that month, Dr. Kilmer administered a transforaminal epidural steroid injection at L4 (Ex. 15F/45). . . .
>
>   At a November 2018 follow-up appointment, the claimant told Dr. Kilmer that her pain level dropped to a zero on a scale from one to ten following her previous injection. However, the claimant reported a gradual return of pain with standing and walking during the previous few weeks. Dr. Kilmer observed that the claimant presented using a single-point cane, but stressed that she exhibited good posture, normal 5/5 strength, symmetric deep tendon reflexes, and negative straight leg-raise testing. Dr. Kilmer also administered an EMG and nerve conduction study of the claimant's left lower extremity, which showed entirely normal findings (Ex. 15F/23, 47; see also Ex. 9F). In January 2019, the claimant underwent another lumbar transforaminal injection at L4 (Ex. 15F/21, 50).
>
>   In March 2019, the claimant was referred to neurosurgeon Chris Sloffer, M.D., for further evaluation of her low back pain with radiation to her left lower extremity. At this appointment, the claimant reported that "she walks with a cane now, which helps some." Upon examination, Dr. Sloffer noted that the claimant demonstrated poor effort with manual muscle testing. However, Dr. Sloffer observed that the claimant exhibited normal gait, normal musculoskeletal range of motion, normal 5/5 muscle strength, symmetric deep tendon reflexes, intact sensation, negative Romberg testing, and no focal neurological deficits. After describing the claimant's imaging studies as "fairly mild," Dr. Sloffer encouraged her to pursue non-surgical treatment, explaining that "I would be reluctant to tell her that any surgical intervention is going to make a great deal of difference in her overall back pain picture" (Ex. 15F/62).

PageID.67-68.

7

The ALJ's RFC is supported by the restrictions set out in a physical RFC assessment prepared by non-examining medical consultant, Saadat Abbasi, M.D. The doctor's restrictions included the capacity: to lift and/or carry 10 pounds frequently and up to 20 pounds occasionally; to sit for about six hours, and stand and/or walk for a total of two hours in an eight-hour workday; to only frequently balance; to only occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs; to never climb ladders, ropes, or scaffolds; and to avoid concentrated exposure to workplace hazards. PageID.70, 109-111. The ALJ found the doctor's opinion partially persuasive because it was generally consistent with the medical record. PageID.70. However, the ALJ explained that, "[i]n not finding Dr. Abbasi's opinion fully persuasive, I note that I have since further reduced the claimant's physical residual functional capacity to allow for greater exertional and postural limitations based on the subsequently received medical evidence and the claimant's hearing testimony." *Id*. In this regard, the ALJ limited plaintiff to performing sedentary work (*i.e.*, "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools"). *See* 20 C.F.R. 416.967(a).

The ALJ also reviewed a check-box "treating physician form" from April, 2019.[1] PageID.70-71, 746-747. The ALJ found the information on this form to be unpersuasive:

> On this form, this provider checked boxes to indicate that the claimant could only sit for less than about six hours, and that she could only stand and/or walk for less than two hours in an eight-hour workday. This provider also indicated that the claimant could only occasionally lift up to ten pounds, perform gross manipulation, stoop, kneel, and climb ramps and stairs. However, this provider advised that the claimant could never lift up to twenty pounds; balance; crouch; crawl; or climb ladders, ropes, or scaffolds. This provider further suggested that the claimant would require the use of a hand-held assistive device for ambulation, as well as a sit-stand-walk option. This provider added that, if the claimant were required to work forty hours per week and eight hours per day in a competitive work environment, she would have serious limitations maintaining concentration and she would need unscheduled work breaks as dictated by her symptoms. Furthermore, this provider indicated that the claimant was likely to be off task for at least 30% of the workday,

---

[1] The handwritten date could be either April 18th or April 19th.

>and that she was likely to miss at least three days of work per month. It appears that the provider who completed and signed this form was [nurse practitioner Daniel Hodge], although the signature line does not contain any legible confirmation of who completed it (Ex. 10F).
>
>I find this opinion unpersuasive because it is inconsistent with the medical evidence and the record as a whole, including the claimant's history of treatment, the objective medical studies, the clinical examination findings, and the claimant's reported activities of daily living. Indeed, if this opinion was completed by Mr. Hodge, it is also without substantial support from his own treatment notes, which do not contain sufficient narrative statements or clinical examination findings to provide a corroborative basis for the substantial degree of limitation proposed. As such, it appears that whoever completed this form may have relied quite heavily on the claimant's subjective report of symptoms and limitations, and that he may have uncritically accepted as true most, if not all, of what the claimant reported. As explained above, though, there exist good reasons for questioning the consistency of the claimant's subjective complaints. I also reiterate that the uncertain nature of who exactly completed this form renders it less persuasive.

PageID.70-71.

The ALJ also reviewed a psychiatric review technique form prepared by psychological consultant Mira Krishnan, Ph.D. on July 24, 2018. PageID.69-70, 106-108. "After reviewing the record, Dr. Krishnan advised that the claimant had mild limitations in her abilities to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage herself (Ex. 1A/5)." PageID.69. The ALJ found Dr. Krishnan's opinion persuasive "because it is consistent with the medical evidence and the record as a whole, including the claimant's limited history of treatment, the generally unremarkable mental status examination findings, and the claimant's reported activities of daily living." *Id*.

In addition to the medical records, the ALJ found that plaintiff's subjective complaints were not fully supported by other evidence in the record. First, the ALJ noted that the objective medical studies and clinical examination findings did not fully corroborate plaintiff's alleged symptoms and limitations.

9

> Specifically, despite the claimant's allegations of disabling back pain, her treating and examining providers have generally observed that she has exhibited intact ability to ambulate without an assistive device, intact station, good posture, normal range of motion of the extremities, normal motor strength, symmetric deep tendon reflexes, intact sensation, negative Romberg testing, negative straight leg-raise testing, no muscle atrophy, and no focal neurological deficits.

PageID.69.  Second, plaintiff acknowledged looking for work and applying for jobs after her alleged onset date, which "suggests the claimant believes she is capable of performing some types of work."  *Id*.  Third, plaintiff described daily activities that are not limited to the extent one would expect given her allegations of disabling symptoms.

> These activities include taking GED classes, grocery shopping, helping with household chores, caring for her personal hygiene, managing her own money, living with her teenage daughter, visiting with her family, attending church, going to the library, using public transportation, going for walks, and reading (Ex. 4E; 5E; 5F/4; 14F/54, 66; 15F/48, 65; Hearing Testimony).

*Id*.

The ALJ properly evaluated the medical evidence and plaintiff's testimony to determine her RFC.  *See Webb*, 368 F.3d at 633.  Based on this record, the ALJ's RFC determination is supported by substantial evidence.

Finally, the ALJ's finding that plaintiff could perform over 1,000,000 sedentary jobs in the national economy is supported by the testimony of the vocational expert, Ms. Shannon Smith.  PageID.95-99.  *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004) ("the Commissioner may rely on the testimony of a vocational expert to find that the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy").

### IV. CONCLUSION

Accordingly, the Commissioner's decision will be **AFFIRMED**. A judgment consistent with this opinion will be issued forthwith.

Dated: March 9, 2022 /s/ Ray Kent
United States Magistrate Judge